# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JESUS GONZALEZ,
        Plaintiff,

v.                                                        Case No. 09CV0384

VILLAGE OF WEST MILWAUKEE,
CHARLES DONOVAN,
PATRICK KRAFCHECK,
CITY OF CHILTON, and
MICHAEL YOUNG,
        Defendants.

## DECISION AND ORDER

Plaintiff Jesus Gonzalez brings this § 1983 action against three police officers and two municipalities, asserting several claims stemming from his arrests for entering retail stores while openly carrying a firearm. Before me now are plaintiff's motion for partial summary judgment and defendants' motion for summary judgment.

## I. FACTS

Plaintiff's suit arises out of two incidents – one in the Village of West Milwaukee and the second in the City of Chilton. In May 2008, plaintiff entered a Menards store in West Milwaukee with an unconcealed firearm in a holster strapped to his thigh. The store manager called the police and spoke to Officer Patrick Krafcheck. Krafcheck then told Officer Charles Donovan that they needed to go to the Menards store "because the manager is complaining about a guy in the store with a gun" and that "employees were nervous, wigged out, freaked out, geeked out, something to that effect." (Krafcheck Dep. at 8,11.) Krafcheck also told Donovan that store employees asked plaintiff to leave, and

plaintiff became upset and argumentative and left the store. Krafcheck and Donovan then drove to the store.

The store was somewhat busy and up to seventy-five employees were on duty. Donovan took a tactical position in the parking lot. Krafcheck entered the store and the manager told him that plaintiff had openly carried a gun into the store and that his presence made employees nervous, and he pointed out plaintiff and his truck in the parking lot. Krafcheck relayed this information to Donovan and also told Donovan that he was not positive that the gun was presently in plaintiff's holster.

Donovan approached plaintiff and observed the holster and that there was a magazine in it but not the firearm. He asked plaintiff if he had worn the holster with the firearm in it into the store, and plaintiff said yes. Donovan inquired as to the location of the firearm, and plaintiff declined to answer. Donovan then arrested him for disorderly conduct. Krafcheck inquired of plaintiff's brother, Adan Gonzalez, who accompanied plaintiff, as to the whereabouts of the gun, and Adan told him that it was in the truck. Adan sought to retrieve the gun, but Krafcheck told him that he would retrieve it, at which point Krafcheck retrieved the gun, ammunition, a magazine and a gun case without objection from Adan.

The officers took plaintiff to the police station, and during the booking process Krafcheck asked plaintiff for identifying information, including his name, address and social security number. Plaintiff resisted providing such information, and Krafcheck advised him that failure to make identifying information available would cause his release to take longer than it otherwise would because "we can't let somebody go without knowing who they are." (Krafcheck Dep. at 32.) Subsequently Krafcheck obtained the information he needed from

2

plaintiff's wallet and released plaintiff soon thereafter.  The Milwaukee County District Attorney ultimately declined to prosecute plaintiff, and plaintiff successfully petitioned for the return of his firearm.

In April 2009, plaintiff and his cousin entered a Wal-Mart store in Chilton, and once again plaintiff had an unconcealed firearm in his holster.  The store manager, Jennifer Fairchild, called 911, and when the Calumet County Sheriff's Department answered, she advised that plaintiff had a weapon in plain view, was buying ammunition for a different gun and that she was concerned about safety in the store.  The Sheriff's Department dispatched Officer Michael Young, passing on to him the information that Fairchild had provided.  When Young arrived at the store, he met with Fairchild and observed that she was nervous and upset, probably because "this type of situation doesn't generally occur there."  (Young Dep. at 78.)  Fairchild told Young that plaintiff's being armed while purchasing ammunition had shocked one of the store's employees, frightening him so much that he pretended not to have the keys necessary to obtain the ammunition that plaintiff wanted to buy.

Fairchild advised Young that plaintiff was at the sporting goods counter, and Young asked her to keep people away from that area.  Young proceeded to the area, and waited for a back-up officer to arrive.  Young himself was very nervous.  When the back-up officer arrived, Young arrested plaintiff for disorderly conduct.  Subsequently, the police processed plaintiff and released him.  Several weeks later, the district attorney stated that he would not issue charges, and the police returned plaintiff's gun.

I will state additional facts in the course of the opinion.

3

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In evaluating cross motions for summary judgment, I take the evidence and all reasonable inferences therefrom in the light most favorable to the party against whom the motion under consideration is made. Speciale v. Blue Cross & Blue Shield Ass'n, 538 F.3d 615, 621 (7th Cir. 2008).

## III.  DISCUSSION

In order to prevail on a § 1983 claim, plaintiff must establish that defendants deprived him of a federal constitutional or statutory right while acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980).  In the present case, plaintiff asserts the deprivation of both constitutional and statutory rights.  I address defendants' motion for summary judgment first as it is dispositive, and I address each of plaintiff's claims in turn.

**A.     Claim Against Donovan and Young for Unlawful Arrest**

Plaintiff first claims that defendants Donovan and Young, the arresting officers in West Milwaukee and Chilton, arrested him without probable cause in violation of his Fourth and Fourteenth Amendment rights.  Defendants dispute plaintiff's assertion that they lacked probable cause and also argue that they are entitled to qualified immunity.

**1.     Probable Cause**

Probable cause to arrest is an absolute defense to any claim against police officers under § 1983 for wrongful arrest. Mustafa v. City of Chi., 442 F.3d 544, 547 (7th Cir.

4

2006). Where, as here, the facts relevant to the issue of probable cause are not in dispute, the court rather than a jury makes the probable cause determination. Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993). In determining whether an officer had probable cause, I place myself in the shoes of a reasonable person in the position of the officer, not an omniscient observer, id., and I consider the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 233 (1983). For probable cause to exist, the facts and circumstances within the officer's knowledge at the time of arrest must be sufficient to warrant a person of reasonable caution to believe that the suspect committed, is committing or is about to commit an offense. Michigan v. De Fillippo, 443 U.S. 31, 37 (1979); see also United States v. Sawyer, 224 F.3d 675, 678-79 (7th Cir. 2002). Probable cause does not require evidence sufficient to support a conviction nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. Sawyer, 224 F.3d at 679. As long as the totality of the circumstances reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists. Id.

To determine whether defendants had probable cause to arrest plaintiff for disorderly conduct, I look to Wisconsin's definition of that offense. Wis. Stat. § 947.01 provides that an individual commits disorderly conduct by "in a public or private place, engag[ing] in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance . . .." Plaintiff did not engage in conduct within the specifically enumerated statutory categories, thus the question is whether defendants reasonably believed that his conduct was "otherwise disorderly...under circumstances in which the conduct tends to cause or provoke a disturbance."

5

Conduct is "otherwise disorderly" if it is similar to the types of conduct enumerated in the statute in that it has a tendency to disrupt good order. City of Oak Creek v. King, 148 Wis. 2d 532, 540 (1989). Wisconsin courts have emphasized that "it is the combination of conduct and circumstances that is crucial in applying the statute to a particular situation." State v. Maker, 48 Wis. 2d 612, 616 (1970). This "is especially true in regard to the 'otherwise disorderly' proscription." State v. Werstein, 60 Wis. 2d 668, 671-2 (1973). Convictions under such proscription typically involve conduct that is inappropriate because of the circumstances involved. Id. at 672-73.

Officers Donovan & Young had probable cause to arrest plaintiff for disorderly conduct. Both officers had reason to believe that plaintiff had or was engaged in disruptive conduct under circumstances in which such conduct tended to provoke a disturbance. No reasonable person would dispute that walking into a retail store openly carrying a firearm is highly disruptive conduct which is virtually certain to create a disturbance. This is so because when employees and shoppers in retail stores see a person carrying a lethal weapon, they are likely to be frightened and possibly even panicky. Many employees and shoppers are likely to think that the person with the gun is either deranged or about to commit a felony or both. Further, it is almost certain that someone will call the police. And when police respond to a "man with a gun" call, they have no idea what the armed individual's intentions are. The volatility inherent in such a situation could easily lead to someone being seriously injured or killed.

The facts of the present case illustrate the above observations. In both West Milwaukee and Chilton, plaintiff's conduct caused store employees to become frightened and to notify their managers. The managers also became frightened and called the police,

who immediately responded. The responding officers clearly had reason to believe that the combination of plaintiff's conduct and the circumstances in which it was committed "tended to provoke a disturbance" and constituted disorderly conduct in violation of § 947.01. The fact that, for reasons undisclosed in the record, the local district attorneys chose not to prosecute is irrelevant to the question of probable cause. Further, nothing in either the federal or state constitutions suggests a contrary result. The Supreme Court has never held that the Second Amendment protects the carrying of guns outside the home. See District of Columbia v. Heller, 128 S. Ct. 2783, 2816-17 (2008). And nothing in Article I, § 25 of the Wisconsin Constitution authorizes a person to openly carry a firearm under circumstances in which such conduct is likely to alarm others.

   **2.   Qualified Immunity**

Even if I assume that defendants did not have probable cause to arrest plaintiff, they are entitled to qualified immunity. Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once raised, to defeat the claim of qualified immunity, a plaintiff must establish (1) that the facts, taken in the light most favorable to him, show the officer's conduct violated a constitutional right and (2) that this constitutional right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). The burden is a heavy one because qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

7

To be clearly established, the constitutional right must be determined "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. As long as "officers of reasonable competence could disagree on [the] issue, immunity should be recognized." Malley, 475 U.S. at 341; see also Wagner v. Washington County, 493 F.3d 833, 837 (7th Cir. 2007). Stated differently, the "clearly established" inquiry asks whether "in the light of pre-existing law the unlawfulness . . . [of the conduct was] apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Thus, in the present case, to defeat the claim of qualified immunity, plaintiff must show that no reasonable police officer faced with the facts that Donovan and Young faced could have believed that he had probable cause to arrest plaintiff. Humphrey v. Staszak, 148 F.3d 719, 725 (7th Cir. 1998). In other words, defendants are immune as long as they had "arguable" probable cause. Id., see also Mahoney v. Kesery, 976 F.2d 1054, 1057 (7th Cir. 1992). Plaintiff fails to meet this burden. He cites no case holding or suggesting that a reasonable police officer in the position of Donovan or Young could not have reasonably believed that he had probable cause to arrest plaintiff for violating § 947.01.

**B.     Claim Against Krafcheck for Unlawful Search and Seizure**

Plaintiff's second claim is that after Donovan arrested him, Krafcheck violated his Fourth and Fourteenth Amendment rights by seizing his gun and gun-related accessories from the truck. After Donovan arrested plaintiff, Krafcheck asked plaintiff's brother, Adan, where the gun was and Adan said it was in the truck and reached into the truck to retrieve it. Krafcheck told Adan that he would retrieve it and Adan did not object. Krafcheck seized

8

the firearm and accessories as evidence. Plaintiff's claim fails for several reasons. First, Krafcheck's act was lawful because the gun and accessories constituted evidence of a crime, and police may search a vehicle incident to a recent occupant's arrest if it is reasonable to believe the vehicle contains evidence of the offense. Arizona v. Gant, 129 S. Ct. 1710, 1723 (2009). Second, Krafcheck's act was lawful because Adan, who had apparent authority over the truck, consented to it. A person with authority may consent to a search or seizure. United States v. Mosby, 541 F.3d 764, 767 (7th Cir. 2008).

**C.     Claim Against Municipalities for Wrongful Retention of Firearm**

Plaintiff asserts that the Village of West Milwaukee and the City of Chilton violated his Fourth and Fourteenth Amendment rights by failing to timely return the firearms that the officers seized as evidence. However, this contention fails because plaintiff does not meaningfully develop a legal argument in support of it. Plaintiff asserts that the municipalities are liable for wrongful retention of his property, but he does not argue the point or cite any authority. (Pl.'s Resp. Mem. In Opp'n to Defs.' Mot. for Summ. J. at 2.) "Arguments not developed in any meaningful way are waived." Cent. States, SE & SW Areas Pension Fund v. Midwest Motor Express, 181 F.3d 799, 808 (7th Cir. 1999); see also Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1237 (7th Cir. 1997) (stating that a "party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). Further, plaintiff's claim seems to be based on the concept of a "continuing seizure," which the Seventh Circuit has rejected. Lee v. City of Chi., 330 F. 3d 456, 466 (7th Cir. 2003).

9

**D.     Privacy Act Claims Against Donovan and the Village of West Milwaukee**

Next, plaintiff claims that Donovan and the Village of West Milwaukee violated the Privacy Act of 1974, Pub. L. 93-579 § 7, 88 Stat. 1896, 1909 (1974), reprinted in 5 U.S.C. § 552(a) (note) (2004)).  First, plaintiff alleges a violation of § 7(a)(1), which makes it "unlawful for any Federal, State or local government agency to deny to any individual any right, benefit or privilege provided by law because of such individual's refusal to disclose his social security account number."  Second, plaintiff alleges a violation of § 7(b), which requires agencies that request an individual's social security number to "inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it."

Plaintiff's Privacy Act claims raise a number of questions but ultimately fail.  First, for reasons largely relating to the fact that § 7 was never codified and appears only in the Historical and Statutory Notes section of the United States Code, courts have disagreed as to whether it applies to state and local as well as federal agencies.  Compare Schmitt v. City of Detroit, 395 F.2d 327, 329-30 (6th Cir. 1999) (holding that § 7 applies only to federal agencies), and Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999) (same), with Schwier v. Cox, 340 F.3d 1284, 1292 (11th Cir. 2003) (holding that § 7 also applies to state and local agencies), and Ingerman v. Del. River Port Auth., 630 F. Supp. 2d 426, 437-38 (D. N.J. 2009) (same).  I find the reasoning of Schwier and Ingerman persuasive and therefore will assume that § 7 applies to state and local governmental bodies.

Second, plaintiff's Privacy Act claims raise the question of whether a plaintiff may use § 1983 to enforce an alleged violation of § 7.  The answer to this question depends on whether § 7 confers a right personal to plaintiff and whether plaintiff is entitled to a private

remedy. Jogi v. Voges, 480 F.3d 822, 828 (7th Cir. 2007) (citing Gonzaga Univ. v. John Doe, 536 U.S. 273, 282 (2002)). In Schwier, the Eleventh Circuit, applying Gonzaga, held that § 7(a) of the Privacy Act was enforceable via a § 1983 action. Largely for the reasons set forth in Schwier, I reach the same conclusion. Section 7(a)(1) contains an unambiguous prohibition ("it shall be unlawful"), and is clearly intended to confer on individuals the right to refuse to disclose their social security numbers without suffering any legal detriment.

However, while plaintiff may use § 1983 to assert his § 7(a)(1) claim, he presents insufficient evidence of a violation of § 7(a)(1) to survive defendants' motion for summary judgment. As stated, § 7(a)(1) makes it unlawful to deny an individual a "right, benefit or privilege" for refusing to disclose his social security number. Plaintiff's claim fails because he identifies no right, benefit or privilege that defendants denied him. Plaintiff presents no evidence that defendants conditioned his release on disclosure of his social security number. See e.g., Connecticut v. Vickery, et al., No. CR2-90-59545, 1991 WL 32153, at *6 (Conn. Super. Ct. Feb.15, 1991). At most, Krafcheck told plaintiff that his release might be delayed until the police found out who he was. As an arrestee, plaintiff had no right to remain anonymous, and defendants did not violate § 7(a)(1).

Turning to plaintiff's § 7(b) claim, I conclude that plaintiff may not use § 1983 to enforce an alleged violation of § 7(b). As stated, for a plaintiff to use § 1983 to assert a statutory claim, the statutory provision must confer on the plaintiff a personal legal right to do so. Jogi, 480 F.2d at 828. In determining whether a provision confers such a right, two inquiries are relevant: (1) whether the provision by its terms grants private rights to an identifiable class; and (2) whether it is phrased in terms of the persons benefitted. Id.

Unlike § 7(a) of the Privacy Act, § 7(b) satisfies neither of these tests. Section 7(b) requires government agencies to provide information to persons who are asked to disclose their social security numbers, but by its terms, it grants no private rights and does not speak in terms of persons benefitted. See Bush v. Lancaster City Bureau of Police, No. 07-3172, 2008 WL 3930290, at *7 (E.D. Pa. Aug. 26, 2008) (holding that § 7(b) does not confer a personal legal right). Thus, plaintiff's § 7(b) claim fails. Finally, even if plaintiff could use § 1983 to assert a § 7(b) claim, his claim against the Village of West Milwaukee would fail because he presents no evidence that the Village had a policy or practice of failing to disclose the information required by § 7(b). See Monell v. Dep't of Social Servs. of the City of N.Y,, 436 U.S. 658, 694-5 (1978).

## IV. CONCLUSION

Plaintiff seeks various types of relief, including a declaratory judgment, but because his claims fail, he is not entitled to relief. Therefore, for the reasons stated,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**, and this case is **DISMISSED.**

Dated at Milwaukee, Wisconsin, this 11 day of May, 2010.

/s_____
LYNN ADELMAN
District Judge